UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEPAR PLASTIK SAN. VE TIC. LTD. STI, a Turkish Limited Liability Company,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>EDRIS PLASTICS MFG., INC., a California Corporation,<br><br>Defendant/Counter-Plaintiff. | Case No. CV 23-08721-MWF (JCx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

  This matter came on for trial before the Court sitting without a jury on February 25, 2025. Following the presentation of argument, the matter was taken under submission.

  Having carefully reviewed the record and the arguments of counsel, as presented at the trial and in their written submissions, the Court now makes the following findings of fact and reaches the following conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact that constitutes a conclusion of law is also hereby

adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is also hereby adopted as a finding of fact.

The verdict is returned in favor of Defendant and Counter-Plaintiff Edris Plastics Mfg., Inc. ("Edris") as to invoices EP0007 an EP0008 and in favor of Plaintiff and Counter-Defendant Separ Plastik San. Ve Tic. Ltd. STI ("Separ") as to invoice EP0016. The EP0007 and EP0008 shipments were made up of non-conforming goods, and Edris accepted those shipments under the Uniform Commercial Code. However, as to invoices EP0007 and EP0008, Edris seasonably notified Separ of the non-conformity, thereby retaining its ability to recover under the Uniform Commercial Code. Edris is entitled to its storage costs for the goods under those invoices and the difference between the products' contemplated and ultimate sales value, less the amount recovered by selling the non-conforming goods. As to EP0016, Edris did not inform Separ that the goods were defective until three to four months after the goods arrived. The Court cannot find that the rejection of the goods occurred in a commercially reasonable time. Separ is entitled to cover the unpaid invoice amount for this shipment.

In aggregate, this results in a net recovery for Separ in the amount of **$18,963.60**.

## I.     FINDINGS OF FACT

### A.    The Parties

1. Separ is a Turkish Limited Liability Company that manufactures and ships disposable plastic products, including portion cups, cutlery, plates, and containers.

2. Edris is a California corporation that manufactures and distributes plastic products, and particularly cups, plates, and bags.

3. Separ and Edris are both "merchants" within the meaning of the Uniform Commercial Code.

### B.    The Witnesses

4. Mert Bal testified on February 25, 2025. He is the export manager for Separ and has worked for the company since 2016. His position involves managing documentation and processing customer inquiries, among other tasks.

5.  Chris Issagholian also testified on February 25, 2025. He described his position as "sales number one" at Edris, which is owned by his father, Ovic Issagholian. His responsibilities include sales and marketing tasks, in addition to identifying new specialty products for Edris to include in its product line.

**C.  The Parties' Early Relationship and Shipment of Invoices EP0007 and EP0008**

6.  Separ seeks compensation for products sold under three invoices: EP0007, EP0008, and EP0016. Separ abandoned a claim for goods under invoice EP0015 at trial after documentation showed that Edris paid that invoice. Edris seeks compensation for the costs associated with storing the goods under those invoices, which Edris claims do not conform to the terms of the parties' contracts as expressed in the purchase orders.

7.  In March 2021, Separ and Edris had initial discussions about Separ providing Edris with plastic cutlery. In April 2021, Bal and Issagholian met and agreed to begin working together.

8.  Edris had a relationship with the retail entity 99 Cents Only Stores ("99 Cents Only"), whereby Edris would provide 99 Cents Only with certain plastic products.

9.  In May 2021, 99 Cents Only asked Edris to supply 99 Cents Only with square, blue plastic containers. 99 Cents Only generated a purchase order for the blue containers on May 12, 2021.

10. In June 2021, Separ began to receive purchase orders from Edris for the blue plastic containers. The blue plastic containers were branded with 99 Cents Only designs, so had to be specially made.

11. At some time between April and July 2021, Issagholian informed Bal that Edris needed the blue plastic containers because of a contract with 99 Cents Only, which had an expiration date in August 2021.

12. In July 2021, Edris placed orders for the goods falling under invoices EP0007 and EP0008.

13. In August 2021, Separ gave Edris a discount on a certain shipment—not at issue here—because of product defects.

14. The original cancellation date for 99 Cents Only's contract for the blue plastic containers was August 3, 2021. 99 Cents Only did not receive the blue plastic containers by that time but extended the cancellation date into September 2021.

15. In September 2021, Edris made its first payment to Separ for the shipment of plastic goods. The payment was made as to invoices not at issue here.

16. According to Bal, Issagholian informed Bal in September 2021 of his need to sell blue plastic containers to 99 Cents Only by October or November 2021. At another time, Bal claimed that he was not informed of the 99 Cents Only contract until November or December 2021.

17. 99 Cents Only continued to extend the cancellation date of its purchase order with Edris relating to the blue plastic containers. The Court heard testimony that 99 Cents Only extended the cancellation date until October 17, 2021.

18. In December 2021, five months after they were ordered, the goods under invoices EP0007 and EP0008 shipped from Turkey. 99 Cents Only had already cancelled the purchase order for blue plastic containers by that time.

19. During this period, Separ and Edris had several open purchase orders with one another, and Edris would order more products before all of the preceding purchase orders were completed.

20. Although the containers shipped under purchase orders EP0007 and EP0008 contained blue plastic containers, the shipping materials—which were visible to Issagholian through an online platform—stated that those containers held plastic portion cups.

21. Bal believed that the containers holding the products ordered under EP0007 and EP0008 should have arrived in February 2022, but they did not arrive until March 2022, eight months after being ordered by Edris.

22. Upon opening the containers, Edris learned that they contained blue plastic containers, not portion cups. Issagholian immediately informed Bal that Edris did not want the blue plastic containers because the purchase order with 99 Cents Only had already been cancelled. The blue plastic containers were branded with 99 Cents Only logos, so could not easily be resold. Issagholian informed Bal that although Edris did not want the blue plastic containers, it would attempt to help Separ sell the containers to another customer, because the products were already in America.

### D.   Shipment of Invoice EP0016

23. In March 2022, the goods under invoice EP0016 shipped from Turkey. The goods under a related invoice, EP0015, shipped at the same time. Separ initially brought claims relating to EP0015, but abandoned those claims upon proof that EP0015 was paid. EP0015 and EP0016 were orders for plastic portion cups.

24. On May 24, 2022, Issagholian asked that Bal continue having Separ produce portion cups.

25. On approximately June 30, 2022, Bal began asking Issagholian for payments to cover EP0015 and EP0016.

26. At some time between June 7, 2022, and July 2022, the containers sent under invoices EP0015 and EP0016 arrived at port.

27. At some time between July and August 2022, the goods arrived in Edris's warehouse after being released from port.

28. In August 2022, Issagholian responded to Bal's request for payment of invoices EP0015 and EP0016. Issagholian informed Bal that he did not want to have Edris pay because of his opinion that there was a delay in shipping and that he had told Bal not to send the product.

29. At some time between October and November 2022, while at a restaurant industry trade show, Issagholian learned of defects in the portion cups shipped under invoices EP0015 and EP0016. Apparently because too little plastic was injected into the portion cup moldings during production, the sides of the portion cups had holes which

rendered them unfit for use. Issagholian informed Separ of the defect while at the trade show.

30. On November 1, 2022, Edris paid Separ for invoice EP0015. The same day, Issagholian sent photographs of the portion cup defect to Separ.

### E. Edris's Storage of the Goods

31. In October or November 2022, Issagholian informed Bal that the delay in receiving the goods under invoices EP0007 and EP0008 meant that he would keep the shipments in storage and that Edris would charge Separ for that storage. Edris had apparently been unsuccessful in finding a buyer for the blue plastic containers in the intervening time before this communication.

32. In January 2023, the parties had further discussion about storage of the goods. The parties discussed whether Separ would be able to pick up some of the products. Issagholian reiterated that he may be able to sell the product. Issagholian asked Separ for discounts on the products.

33. Edris charged storage fees to Separ for Edris's storage of the blue plastic containers from March 2022 to February 2023, on a per-pallet basis. At the warehouse where Edris stored the products, its total rent was $29,000 per month. Edris charged Separ for storage in the amount of $2,840 per month for the use of around 90 pallets which were occupied by the goods.

34. On February 14, 2023, Issagholian told Bal that Separ needed to retrieve the blue plastic containers by February 17, or else Edris would sell the containers to 99 Cents Only for $0.50 per unit, and Edris would split the proceeds with Separ 50-50. At this time, 99 Cents Only reopened the closed purchase order for the blue plastic containers.

35. On February 17, 2023, Issagholian told Bal he would dispose of the defective portion cups.

36. Separ planned to retrieve the products on February 23, 2023. On that date, Separ allegedly received an email stating that Edris disposed of the products on February 17.

37. On February 27, 2023, Bal found someone to retrieve the products from Edris's warehouse. The parties do not appear to have communicated further about retrieval of the products.

38. Edris stopped charging Separ storage fees for the blue plastic containers in February 2023. In February 2023, Edris sold the blue plastic containers to 99 Cents Only. 99 Cents Only retrieved half of the blue plastic containers in February 2023, and the other half in March 2023.

39. On March 29, 2023, 99 Cents Only issued the final purchase order reflecting its ultimate purchase of the blue containers at $0.50 per unit.

40. Because certain findings can only be understood in light of the law, the Court both **FINDS and RULES** as set forth in Paragraphs 8-9, 12, 15-16, and 28.

## II. CONCLUSIONS OF LAW

1. Separ brings five claims against Edris, for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) conversion; (4) account stated; and (5) unjust enrichment. In its Complaint, Separ sought $126,356.80 in damages. Edris brings one counterclaim against Separ, for breach of contract. Common to all of the claims and the counterclaim are the questions of whether Edris acted in accordance with the law when it received the goods under invoices EP0007, EP0008, and EP0016.

**A. Claim One: Breach of Contract; Counterclaim One: Breach of Contract**

2. Establishing a claim for breach of contract "requires a showing of '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800, 169 Cal. Rptr. 3d 171 (2014) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256 (2011)).

3. A purchase order is compelling evidence of a contract between merchants; although competing purchase orders may render the terms of a contract unclear, here there is no such issue. *See, e.g.*, *Seoul Semiconductor Co. v. Finelite, Inc.*, 694 F. Supp.

3d 1199, 1207 (N.D. Cal. 2023) (finding that where parties did not contest the issue, purchase orders constituted the relevant contracts in dispute).

4. Here, the goods shipped under invoices EP0007 and EP0008 did not conform to the terms of the relevant purchase orders, because the purchase orders specified that the orders were for plastic portion cups. *See, e.g.*, Cal. Comm. Code § 2601 ("[I]f the goods or the tender of delivery fail in ***any respect*** to conform to the contract, the buyer may (a) Reject the whole; or (b) Accept the whole; or (c) Accept any commercial unit or units and reject the rest.") (emphasis added). Moreover, the goods were non-conforming even if the order was for blue containers, because Edris informed Separ that it needed the containers subject to a contract with 99 Cents Only, which had an initial cancellation date in August 2022. *Id.* Although that cancellation date was extended until October 17, 2021, the goods corresponding to invoices EP0007 and EP0008 did not arrive until March 2022.

5. As discussed above, when a buyer receives non-conforming goods, they may reject all of the goods, accept all of the goods, or accept some amount and reject the rest. Cal. Comm. Code § 2601.

6. Section 2602 of the California Commercial Code, as modified by section 2603, provides the appropriate manner of rejection of non-conforming goods. "Rejection of goods must be within a reasonable time after their delivery or tender." Cal. Comm. Code § 2602(1). Ordinarily, unless sections 2603 or 2604 of the California Commercial Code apply, "[a]fter rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller" and "[i]f the buyer has before rejection taken physical possession of goods . . . he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them." Cal. Comm. Code § 2602(2)(a)-(b).

7. Edris argued that California Commercial Code section 2603 should apply to expand Edris's rights in dispensing with the goods. Section 2603 provides that "when the seller has no agent or place of business at the market of rejection a merchant buyer is

under a duty after rejection of goods in his possession or control to follow any reasonable instructions received from the seller with respect to the goods and in the absence of such instructions to make reasonable efforts to sell them for the seller's account if they are perishable or threaten to decline in value speedily." Cal. Comm. Code § 2603(1).

8. As both a finding of fact and conclusion of law, the Court **FINDS and RULES** that section 2603 is inapplicable to the goods at issue in this action. Separ put forward no evidence that the products were perishable, or else that the market price of plastic goods was quickly declining. Moreover, the official Uniform Commercial Code comments to this section, and the main text of section 2604 (which modifies this section) refer to the goods these sections apply to as "perishable goods" or "perishables." *See* Cal. Comm. Code § 2603 cmt. 4 ("[T]his section makes the resale of perishable goods an affirmative duty."); Cal. Comm. Code § 2604 ("Subject to the provisions of the immediately preceding section on perishables . . . ."). Edris presented no argument that such language could apply to plastics, which are not perishable by nature. Accordingly, the Court finds and rules that section 2603 is inapplicable both because of the lack of evidence of market volatility and because of this limitation on section 2603's applicability.

9. Section 2602 therefore defines Edris's options to reject the goods. The evidence produced showed that Edris stated that it immediately rejected the blue containers associated with invoices EP0007 and EP0008. However, the evidence shows that Edris accepted the non-conforming shipment through its conduct, and the Court so **FINDS and RULES**. California Commercial Code section 2606 provides that acceptance occurs when the buyer, "[a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity." Cal. Comm. Code § 2606(1). "[I]f a buyer resells goods after learning of a defect, courts and commentators tend to treat the resale as inconsistent with the seller's ownership." *CSNK Working Cap. Fin. Corp. v. Next Creation Holdings*, No. 17-cv-00305-HRL, 2018 WL 276815, at *5 (N.D. Cal. Jan. 3, 2018) (collecting

cases). That is, resale is fundamentally inconsistent with the notion that the goods were rejected.

10. However, it is still the case that Edris may be able to recover damages, even if the goods were accepted. California Commercial Code section 2714 specifies the measure of a buyer's damages with regard to accepted goods. "Where the buyer has accepted goods and given notification . . . he or she may recover as damages for any nonconformity of tender, the loss resulting in the ordinary course of events from the seller's breach as determined in any manner that is reasonable. . . . In a proper case any incidental and consequential damages under Section 2715 also may be recovered." Cal. Comm. Code § 2714(1), 2714(3). In turn, section 2715 permits recovery of "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected," among other damages. Cal. Comm. Code § 2715. Although this section facially applies to "goods rightfully rejected," section 2714 states that incidental and consequential damages under 2715 may also be recovered for accepted goods. Cal. Comm. Code § 2714(3).

11. Those damages would be offset by the requirement under California Commercial Code section 2607(1) that Edris "must pay at the contract rate for any goods accepted." Cal. Comm. Code § 2607(1).

12. The Court **FINDS and RULES** that the goods shipped under EP0016 were also defective. The plastic portion cups were riddled with holes that made them unfit for use. Therefore, Separ failed to make perfect tender as required by the Uniform Commercial Code.

13. *However*, as to EP0016, it is also the case that Edris failed to notify Separ of its rejection of the goods until at least two months after the shipment arrived at Edris's warehouse, and perhaps longer. This is in stark contrast to Edris's treatment of the goods

shipped under invoices EP0007 and EP0008, where the rejection of the non-conforming goods was apparently immediate.

14. "Where a tender has been accepted[] . . . [t]he buyer must, within a reasonable time after he or she discovers *or should have discovered* any breach, notify the seller of breach or be barred from any remedy." Cal. Comm. Code § 2607(3)(A) (emphasis added).

15. The Court **FINDS and RULES** that Edris informed Separ of the portion cup defect immediately after learning of it, but that Edris should have earlier discovered the defect. The "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Cal. Comm. Code § 2602(1). California courts have interpreted this to mean a commercially reasonable time, as determined by the particular circumstances of the case, and with a lower standard applied to retail consumers than to merchants. *See, e.g.*, CACI § 1423 (collecting cases). Under the circumstances of this case, where Edris immediately notified Separ of the non-conforming nature of the shipment of blue containers, a delay of at least two months was not commercially reasonable and was outside of the parties' course of dealing.

16. The Court **FINDS AND RULES** that the goods under EP0016 were accepted and Separ was not notified of the non-conformity in a commercially reasonable time, barring Edris from any recovery as to that shipment. And, as previously expressed, because Edris accepted the goods, it is also obligated to pay the contract rate for those goods. Cal. Comm. Code § 2607(1).

17. Accordingly, the Court finds both that Separ has established its claim for breach of contract in part (as to invoice EP0016) and that Edris has established its counterclaim for breach of contract in part (as to invoices EP0007 and EP0008).

B. **Claim Two: Breach of the Covenant of Good Faith and Fair Dealing**

18. "In order to establish a breach of the covenant of good faith and fair dealing, a plaintiff must show: '(1) the parties entered into a contract; (2) the plaintiff fulfilled his

obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.'" *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017) (quoting *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010)).

19. Separ's claim for breach of the covenant of good faith and fair dealing fails. Separ shipped non-conforming goods to Edris. Edris accepted the non-conforming goods, but seasonably notified Separ of the non-conforming nature of the shipment, thereby retaining its rights to recover its damages. Nonetheless, Edris is required to pay the contract price for the goods as described above and has not done so.

20. However, Separ's claim for breach of the covenant of good faith and fair dealing fails because it is duplicative of the breach of contract claim. "A breach of the implied covenant of good faith and fair dealing involves something more than breach of the contractual duty itself." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004). "[I]f 'the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract clause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Id.* (quoting *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387 (1990)).

21. Here, Separ predicated its claim for breach of the implied covenant of good faith and fair dealing on the same set of facts as the breach of contract claim and put forward no evidence at trial that the facts here went beyond an ordinary breach of contract dispute. Separ also seeks no recovery exclusive to matters in tort, like punitive

damages. The Court therefore finds that the implied covenant claim is duplicative and superfluous.

### C. Claim Three: Conversion

22. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort." *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387, 147 Cal. Rptr. 3d 768 (2012) (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066, 80 Cal. Rptr. 2d 704 (1998)).

23. Based on the preceding analysis, the Court finds that the elements of conversion are not present. Specifically, with respect to all of the goods, the Court has found that Edris accepted the shipments. Edris could not have converted property that was its own upon its acceptance of the goods. Whether Edris should have made payment for those goods is another matter, and one more properly addressed through claims other than conversion.

### D. Claim Four: Account Stated

24. "The elements of an account stated are: '(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due.'" *North v. Rosenoff*, No. 16-cv-02829 NC, 2017 WL 2728615, at *1 (N.D. Cal. Feb. 23, 2017) (quoting *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600, 76 Cal. Rptr. 663 (1969)).

25. Here, the elements of an account stated are not met because, regardless of the legitimacy of Issagholian's refusals, the fact is that Edris, through Issagholian, expressly

refused to promise to pay the amount due. In fact, Edris claimed that the amounts were not due and that it was under no obligation to pay any of the invoices.

### E. Claim Five: Unjust Enrichment

26. "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000)).

27. While a party may plead a cause of action for unjust enrichment in the alternative to a breach of contract cause of action, Separ's unjust enrichment claim is precluded by the breach of contract cause of action at this stage because there is no dispute that there are binding and enforceable contracts governing the parties' disputes. *See, e.g.*, *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983 (E.D. Cal. 2018) ("[A] plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'") (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388, 137 Cal. Rptr. 3d 293 (2012)); *McBride v. Boughton*, 123 Cal. App. 4th, 379, 388, 20 Cal. Rptr. 3d 115 (2004) (outlining situations wherein an unjust enrichment claim, which is fundamentally a quasi-contract claim, may be maintained because the express contract is unenforceable).

28. Accordingly, because of the presence of binding and enforceable contracts between the parties, the Court **FINDS and RULES** that resorting to a quasi-contractual remedy would be inappropriate.

### F. Measure of Damages

29. For the reasons discussed above, both Separ and Edris are entitled to recovery for breach of contract. Which party ultimately recovers from the other is a question of the measure of the parties' damages.

30. The Court has found that Separ is entitled to the contract value of invoices EP0007 and EP0008, because Edris accepted the non-conforming goods. Separ is therefore entitled to $51,299.20 in damages for these invoices. However, as described

above, Edris is also entitled to recovery for its incidental and consequential damages, and the storage fees incurred by way of Edris providing "care and custody" for the non-conforming goods.

31. Although the blue containers were later sold by Edris, they were sold at $0.50 per unit, whereas when they were originally ordered by 99 Cents Only, the relevant purchase order included a per-unit cost of $1.40. The contract price for the 99 Cents Only blue containers was $68,544.00 when the per-unit cost was $1.40, but $24,480.00 when the per-unit cost dropped to $0.50. Accordingly, Edris is entitled to the difference between these figures, $44,064.00.

32. As discussed above, Edris is also entitled to compensation for the "care and custody" of the non-conforming goods. The record demonstrates that Edris worked zealously in trying to mitigate its losses by selling the blue plastic containers, but its options were limited because the containers were already branded with 99 Cents Only insignias. The blue plastic containers arrived in March 2022, and were sold to 99 Cents Only in February 2023. The testimony and exhibits in the case demonstrated that Edris's monthly rent is $29,000. The testimony indicates that, for the blue plastic containers and plastic portion cups combined, Edris utilized at least 86 pallets in storing the non-conforming goods. Although Issagholian claimed that the figure was "90-plus pallets," this figure is impossible to square with his other testimony that Edris charged between $33 and $34 for storage per pallet, with the total rent charged to Separ at $2,840 per month based on this per-pallet figure.

33. Issagholian also testified that "between 13 to 15 pallets" remain occupied by Separ's products, the plastic portion cups for which there was no buyer. Conservatively,

therefore, the testimony indicates that at least 71 pallets were occupied by the blue plastic containers.

34. Edris is therefore entitled to compensation at the rate of $33 per pallet for 71 pallets for 11 months. This total amounts to $25,773.00.

35. In summation, as to invoices EP0007 and EP0008, Separ is owed $51,299.20 for Edris's non-payment. Edris is owed $69,837.00. Accordingly, as to these invoices, the net recovery is $18,537.80 for Edris.

36. As to EP0016, Edris did not notify Separ of its rejection or revocation of acceptance within a commercially reasonable time and is therefore barred from recovery under that invoice. Meanwhile, Separ is entitled to recovery for the accepted goods. Based on the exhibits, the Court **FINDS** that the contract price for EP0016 is $37,501.40.

37. To summarize, the calculated amounts are as follows:

**Separ**

$51,299.20 (damages for invoices EP0007 ad EP0008)

$37,501.40 (damages for invoice EP0016)

**Edris**

$25,773.00 (compensation for care and custody of nonconforming goods)

$44,064.00 (difference between contract and sale price for invoices EP0007 and EP0008)

38. Ultimately, therefore, Edris is entitled to $18,537.80 in compensation for invoices EP0007 and EP0008, while Separ is entitled to $37,501.40 in compensation for EP0016. In total, this results in a recovery of **$18,963.60** in Separ's favor.

### III. VERDICT

The Court **FINDS and RULES** as follows:

1. On Separ's First Claim for breach of contract, the Court finds in favor of Separ. Separ is entitled to a total recovery of $88,800.60 ($51,299.20 + $37,501.40), offset by Edris's recoverable damages.

2. On Separ's Second Claim for breach of the implied covenant of good faith and fair dealing, the Court finds in favor of Edris.

3. On Separ's Third Claim for conversion, the Court finds in favor of Edris.

4. On Separ's Fourth Claim for account stated, the Court finds in favor of Edris.

5. On Separ's Fifth Claim for unjust enrichment, the Court finds in favor of Edris.

6. On Edris's Counterclaim for breach of contract, the Court finds in favor of Edris. Edris is entitled to recovery of $69,837.00, offset by Separ's recoverable damages.

7. The net recovery is in favor of Separ is the amount of **$18,963.60.**

The Court will enter a separate judgment pursuant to Federal Rules of Civil Procedure 54 and 58(b).

Dated: August 6, 2025

_____
MICHAEL W. FITZGERALD
United States District Judge